MAGISTRATE JUDGE COX

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

08CR   534

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No.            JUDGE ZAGEL |
| | ) | |
| v. | ) | Violation: Title 18, United States Code, |
| | ) | Section 371 |
| LAWRENCE GONSALVES | ) | |

J.N **FILED**

JUL X 8 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

The UNITED STATES ATTORNEY charges:

1. At times material to this indictment:

    a. The Hazardous Materials Transportation Act, as amended, was enacted by Congress to protect the general public from the risks to life and property inherent in the transportation of hazardous materials in commerce. The Act requires the Secretary of the Department of Transportation to designate as hazardous any materials that pose unreasonable risks to health and safety when transported in commerce, and to enact appropriate regulations to ensure the safe transportation of such materials in commerce. Title 49, United States Code, Section 5101, *et seq.*

    b. Pursuant to this authority, the Department of Transportation has identified materials that are hazardous because they are capable of posing an unreasonable risk to health, safety and property when transported. The hazardous materials are listed by chemical name or hazardous characteristic category. *See* Title 49, Code of Federal Regulations ("CFR"), Sections 171.8, 172.101. The term "hazardous materials" includes



cyanide and cyanide solutions, which are considered a "poisonous" material. *See id.*

   c. The Department of Transportation has set forth regulations relating to all modes of transportation of hazardous materials, including transportation via motor vehicle. *See* 49, C.F.R. § 100, *et seq.* These regulations prohibit any person from transporting hazardous materials in interstate, intrastate, and foreign commerce by a motor vehicle unless the hazardous materials are transported in accordance with certain safety requirements. The safety requirements apply to the acceptance and transportation of hazardous materials by private, common, or contract carriers by motor vehicle. *See* 49 C.F.R. § 177.800.

   d. The Department of Transportation prohibits any person from transporting hazardous materials unless the hazardous materials are accompanied by shipping papers that properly describe the hazardous materials. *See* 49 C.F.R. § 172.200, *et seq.* The description of hazardous materials on shipping papers must include the proper shipping name, the hazard class or division, the identification number, the packing group, and the quantity. The shipping papers of hazardous materials must also identify the type of hazard, degree of danger, information regarding its safe handling, and provide the information necessary for responding to an accident or incident involving a hazardous material. *See id.* at § 172.600, *et seq.* The Department of Transportation further requires that each person who offers a hazardous material for transportation shall certify that the material is offered for transportation in accordance with the shipping papers rules. *See* 49 C.F.R. § 172.204.

e.  Furthermore, the Department of Transportation's safety regulations require that packages containing hazardous materials be marked with certain information that identifies the specific type of hazardous material. *See* 49 C.F.R. § 172.300, *et seq.* The regulations require that each person who offers a hazardous material for transportation to mark the package containing hazardous material with the proper shipping name and identification number of the hazardous material as set forth in the Hazardous Materials Table codified at 49 C.F.R. § 172.101. 49 C.F.R. §§ 172.300 and 172.301(a). The regulations further set forth durability, color, and visibility requirements of hazardous materials markings. 49 C.F.R. § 172.304.

f.  The Department of Transportation's safety regulations also govern the labels that must be placed on packages containing hazardous materials. *See* 49 C.F.R. § 172.400, *et seq.* The regulations require that packages containing poisonous materials be labeled as containing "Poison," and the label must meet specified features such as durability, size, and color. 49 C.F.R. §§ 172.400(a), 172.407 and 172.430. For poisonous materials, the label must show a picture of a skull and crossbones and the word "POISON" in capital letters. 49 C.F.R. § 172.430. 49 C.F.R. § 172.406(a) requires that labels be placed on a side other than the bottom of the package and be located near the proper shipping name marking.

g.  The Department of Transportation further prohibits any person from transporting hazardous materials unless the motor vehicle containing hazardous materials is placarded on each side and each end. *See* 49 C.F.R. § 172.500 *et seq.* The placard must be

of a specific design, size, color and must be readily visible. 49 C.F.R. § 172.500.

2. Beginning in or about early 2006, and continuing through and including early July 2006, at Chicago, in the Northern District of Illinois, and elsewhere

LAWRENCE GONSALVES,

defendant herein, did conspire with Individual A, Individual B and others, to commit an offense against the United States, namely to wilfully and recklessly violate regulations prescribed by the Secretary of Transportation relating to the safe transportation of hazardous material, specifically, Title 49, Code of Federal Regulations, Sections 172.200(a), 172.204(a), 172.300(a), 172.400(a), 172.500(a), 172.600(a), in violation of Title 49, United States Code, Section 5124.

3. It was part of the conspiracy that in or about early 2006, Individual A, who had previously purchased chemicals from GONSALVES, contacted GONSALVES and asked GONSALVES to obtain certain chemicals, including at least 30 pounds of cyanide, to sell to Individual A. GONSALVES agreed to obtain the requested chemicals for Individual A.

4. It was further part of the conspiracy that in or about early 2006, GONSALVES called Individual B and asked him to obtain the chemicals requested by Individual A, including the cyanide. GONSALVES understood that Individual B would purchase the chemicals from a source in Minnesota. GONSALVES further asked Individual B to transport the requested chemicals, including the cyanide, from Minnesota to Chicago, Illinois, so that GONSALVES could redistribute the chemicals to Individual A. Individual

B agreed to obtain the requested chemicals for GONSALVES and transport them to Chicago, Illinois.

5.  It was further part of the scheme that several weeks later, Individual B obtained the chemicals requested by GONSALVES, including at least 30 pounds of cyanide, from his source in Minnesota. While in Minnesota, either Individual B or Individual B's source removed all packaging and/or labels from the cyanide containers which identified the contents of the containers. Based on prior transactions with Individual B, GONSALVES knew that either Individual B or Individual B's source would remove any packaging or labels from the containers which identified the contents as cyanide. The cyanide containers were then placed into a black plastic bag.

6.  It was further part of the scheme that after obtaining the chemicals, including at least 30 pounds of cyanide, Individual B transported the chemicals from Minnesota to Chicago, Illinois, in the back of his van, which did not contain any placarding identifying its contents. Individual B also did not seek or obtain shipping papers as required by the United States Department of Transportation to ship cyanide from Minnesota to Chicago. GONSALVES knew, based on prior transactions, that Individual B would transport the chemicals in the back of an unplacarded van and without obtaining the necessary paperwork.

7.  It was further part of the scheme that once in Chicago, Individual B provided the chemicals, including the cyanide, to GONSALVES.

8.  It was further part of the scheme that on or about June 27, 2006, GONSALVES

distributed at least 30 pounds of the cyanide to Individual A in exchange for approximately $2000.

9. It was further part of the scheme that in or about late June 2006 or early July 2006, GONSALVES gave Individual B a portion of the approximately $2,000 he received from Individual A in exchange for the cyanide to pay for the chemicals. GONSALVES kept the remainder of the money.

## OVERT ACTS

10. To effect the objects of the conspiracy, defendant did commit the following overt acts, among others, in the Northern District of Illinois, Eastern Division, and elsewhere:

   a. In or about early 2006, GONSALVES agreed to obtain certain chemicals, including at least 30 pounds of cyanide, to sell to Individual A.

   b. In or about early 2006, GONSALVES instructed Individual B to obtain at least 30 pounds of cyanide, and instructed Individual B to transport the cyanide from Minnesota to Chicago, Illinois, via motor vehicle.

   c. In or about early 2006, in Chicago, GONSALVES received at least 30 pounds of cyanide from Individual B, which had been transported from Minnesota to Chicago without proper shipping papers, packaging, labeling, and placarding as required by United States Department of Transportation regulations.

   d. On or about June 27, 2006, GONSALVES distributed at least 30 pounds of cyanide to Individual A in exchange for approximately $2,000.

  e. In or about late June or early July 2006, GONSALVES gave Individual B a portion of the approximately $2,000 he received from Individual A in exchange for the cyanide, and GONSALVES kept the remainder of the money.

All in violation of Title 18, United States Code, Section 371.

_Patrick J. Fitzgerald by MMin M_
UNITED STATES ATTORNEY