UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
7-18-08
JUL 18 2008

| | |
|---|---|
| UNITED STATES OF AMERICA ) | No. 08 CR 534 JUDGE JAMES B. ZAGEL |
| vs. ) | Judge James B. Zagel UNITED STATES DISTRICT COURT |
| ) | |
| LAWRENCE GONSALVES ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant LAWRENCE GONSALVES, and his attorney, DEAN MORASK, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The information in this case charges defendant with conspiring with Individual A, Individual B, and others, to commit an offense against the United States, namely to wilfully and recklessly violate regulations prescribed by the Secretary of Transportation relating to the safe transportation of hazardous material, in violation of Title 49, United States Code, Section 5124, all in violation of Title 18, United States Code, Section 371.

3. Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

## **Charge to Which Defendant is Pleading Guilty**

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information. The information charges defendant with conspiring with Individual A, Individual B, and others, to commit an offense against the United States, namely to wilfully and recklessly violate regulations prescribed by the Secretary of Transportation relating to the safe transportation of hazardous material, in violation of Title 49, United States Code, Section 5124, all in violation of Title 18, United States Code, Section 371.

## **Factual Basis**

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning in or about early 2006, and continuing through and including early July 2006, at Chicago, in the Northern District of Illinois, and elsewhere, defendant LAWRENCE GONSALVES, did conspire with Individual A, Individual B, and others, to commit an offense against the United States, namely to wilfully and recklessly violate regulations prescribed by the Secretary of Transportation relating to the safe transportation of hazardous material, specifically, Title 49, Code of Federal Regulations, Sections 172.200(a), 172.204(a), 172.300(a), 172.400(a), 172.500(a), 172.600(a), in violation of Title 49, United States Code, Section 5124, all in violation of Title 18, United States Code, Section 371.

More specifically, at all times material to the events described below:

2

a. The Hazardous Materials Transportation Act (as amended), in order to protect the general public from the risks to life and property inherent in the transportation of hazardous materials in commerce, requires the Secretary of the Department of Transportation to designate as hazardous any materials that pose unreasonable risks to health and safety when transported in commerce, and to enact appropriate regulations to ensure the safe transportation of such materials in commerce. Title 49, United States Code, Section 5101, *et seq.*

b. Pursuant to this authority, the Department of Transportation identified materials that are hazardous because they are capable of posing an unreasonable risk to health, safety and property when transported. The hazardous materials are listed by chemical name or hazardous characteristic category. *See* Title 49, Code of Federal Regulations ("CFR"), Sections 171.8, 172.101. The term "hazardous materials" includes cyanide and cyanide solutions, which are considered a "poisonous" material. *See id.*

c. The Department of Transportation set forth regulations relating to all modes of transportation of hazardous materials, including transportation via motor vehicle. *See* 49, C.F.R. § 100, *et seq.* These regulations prohibit any person from transporting hazardous materials in interstate, intrastate, and foreign commerce by a motor vehicle unless the hazardous materials are transported in accordance with certain safety requirements. The safety requirements apply to the acceptance and transportation of hazardous materials by private, common, or contract carriers by motor vehicle. *See* 49 C.F.R. § 177.800.

d. The Department of Transportation prohibits any person from transporting hazardous materials unless the hazardous materials are accompanied by shipping papers that properly describe the hazardous materials. *See* 49 C.F.R. § 172.200, *et seq.* The description of hazardous materials on shipping papers must include the proper shipping name, the hazard class or division, the identification number, the packing group, and the quantity. The shipping papers of hazardous materials must also identify the type of hazard, degree of danger, information regarding its safe handling, and provide the information necessary for responding to an accident or incident involving a hazardous material. *See id.* at § 172.600, *et seq.* The Department of Transportation further requires that each person who offers a hazardous

    material for transportation shall certify that the material is offered for transportation in accordance with the shipping papers rules. *See* 49 C.F.R. § 172.204.

e. Furthermore, the Department of Transportation's safety regulations require that packages containing hazardous materials be marked with certain information that identifies the specific type of hazardous material. *See* 49 C.F.R. § 172.300, *et seq.* The regulations require that each person who offers a hazardous material for transportation to mark the package containing hazardous material with the proper shipping name and identification number of the hazardous material as set forth in the Hazardous Materials Table codified at 49 C.F.R. § 172.101. 49 C.F.R. §§ 172.300 and 172.301(a). The regulations further set forth durability, color, and visibility requirements of hazardous materials markings. 49 C.F.R. § 172.304.

f. The Department of Transportation's safety regulations also govern the labels that must be placed on packages containing hazardous materials. *See* 49 C.F.R. § 172.400, *et seq.* The regulations require that packages containing poisonous materials be labeled as containing "Poison," and the label must meet specified features such as durability, size, and color. 49 C.F.R. §§ 172.400(a), 172.407 and 172.430. For poisonous materials, the label must show a picture of a skull and crossbones and the word "POISON" in capital letters. 49 C.F.R. § 172.430. 49 C.F.R. § 172.406(a) requires that labels be placed on a side other than the bottom of the package and be located near the proper shipping name marking.

g. The Department of Transportation further prohibits any person from transporting hazardous materials unless the motor vehicle containing hazardous materials is placarded on each side and each end. *See* 49 C.F.R. § 172.500 *et seq.* The placard must be of a specific design, size, color and must be readily visible. 49 C.F.R. § 172.500.

In or about early 2006, Individual A, who had previously purchased chemicals from GONSALVES, contacted GONSALVES and asked GONSALVES to obtain certain chemicals, including at least 30 pounds of cyanide, to sell to Individual A. GONSALVES

agreed to obtain the requested chemicals for Individual A.

In or about early 2006, GONSALVES called Individual B and asked him to obtain the chemicals requested by Individual A, including the cyanide. GONSALVES understood that Individual B would purchase the chemicals from a source in Minnesota. GONSALVES further asked Individual B to transport the requested chemicals, including the cyanide, from Minnesota to Chicago, Illinois, so that GONSALVES could redistribute the chemicals to Individual A. Individual B agreed to obtain the requested chemicals for GONSALVES and transport them to Chicago, Illinois.

Several weeks later, Individual B obtained the chemicals requested by GONSALVES, including at least 30 pounds of cyanide, from his source in Minnesota. While in Minnesota, either Individual B or Individual B's source removed all packaging and/or labels from the cyanide containers which identified the contents of the containers. Based on prior transactions with Individual B, GONSALVES knew that either Individual B or Individual B's source would remove any packaging or labels from the containers which identified the contents as cyanide. The cyanide containers were then placed into a black plastic bag.

After obtaining the chemicals, including at least 30 pounds of cyanide, Individual B transported the chemicals from Minnesota to Chicago, Illinois, in the back of his van, which did not contain any placarding identifying its contents. Individual B also did not seek or obtain shipping papers as required by the United States Department of Transportation to ship cyanide from Minnesota to Chicago. GONSALVES knew, based on prior transactions, that

Individual B would transport the chemicals in the back of an unplacarded van and without obtaining the necessary paperwork. Once in Chicago, Individual B provided the chemicals, including the cyanide, to GONSALVES.

On or about June 27, 2006, at a location in Chicago, GONSALVES distributed at least 30 pounds of the cyanide to Individual A in exchange for approximately $2,000. In or about late June 2006 or early July 2006, GONSALVES gave Individual B a portion of the approximately $2,000 he received from Individual A in exchange for the cyanide to pay for the chemicals. GONSALVES kept the remainder of the money.

7. Defendant disclosed the following self-incriminating information to the government pursuant to the terms of a proffer agreement. Pursuant to Guideline §1B1.8(a), this information may not be used in determining the applicable guideline range for defendant:

Defendant was introduced to Individual A by Individual C. Defendant worked with Individual C at Mark's Pest Control for approximately 5 years in the late 1990s or early 2000s. After Individual C left Mark's Pest Control, he contacted defendant about procuring cyanide. Defendant agreed to provide Individual C with the cyanide, which defendant obtained through Individual B. Defendant added a procurement charge to the price of the chemicals in order to make a profit. Approximately 10 times over the next several years, defendant obtained chemicals for Individual C through Individual B. Although Individual C never told defendant what he did with the chemicals, defendant became suspicious that Individual C was manufacturing controlled substances when Individual C began purchasing

different chemicals other than cyanide. Nevertheless, defendant continued to provide Individual C with the chemicals that he requested.

In 2005, Individual C died. Shortly after Individual C's death, defendant was contacted by Individual A, who asked defendant if he would provide to Individual A the same chemicals that defendant sold to Individual C. Defendant agreed to sell chemicals to Individual A. Over the next year, defendant sold chemicals, including piperidine, cyclohexanone, ether, cyanide, and magnesium to Individual A approximately 15 times. Individual A would typically purchase several thousand dollars worth of chemicals at a time. Sometimes Individual A would only be able to pay for part of a shipment, in which case the defendant would store the remaining chemicals in his garage until Individual A could pay for the remainder. When Individual A needed chemicals, defendant would contact Individual B and provide Individual B with a list of the needed chemicals. Individual B had an unidentified source of supply, who defendant understood resided somewhere in Minnesota. Once Individual B obtained the needed chemicals, he would call defendant, and either defendant would pick up the chemicals or else Individual B would deliver the chemicals to defendant. Individual B would quote the defendant a price for the chemicals, and defendant would then add a procurement charge onto the order so that he could make a profit.

Several months after Individual C's death, defendant was also contacted by Individual D, known to defendant as Bill, who asked defendant if he could provide chemicals to Individual D. Like Individual A, defendant had met Individual D through Individual C

7

several years prior to Individual C's death. Defendant agreed to provide chemicals to Individual D, and approximately 5-10 times over the next several years, defendant sold chemicals, including piperidine, magnesium, cyanide, ether and cyclohexanone to Individual D. Individual D would typically purchase approximately $1000 to $2000 worth of chemicals each time. Individual D purchcased chemicals less frequently than Individual A. Typically, Individual D would call defendant on the telephone and place an order for the chemicals that he needed. Defendant would obtain the chemicals through Individual B, and then would meet Individual D in a public place to exchange the chemicals for money.

In early 2006, Individual A requested a batch of chemicals, including cyanide. Individual B obtained the requested chemicals, including the cyanide, which he gave to the defendant. Defendant then gave some of the chemicals to Individual A. Individual A was not able to pay for all of the chemicals that he ordered, and defendant therefore kept some of the chemicals, including several containers of cyanide, in his garage. Prior to delivering the requested chemicals, Individual B informed defendant that he had been told that piperidine was used to manufacture illegal drugs. As a result of this information, defendant decided not to sell any more piperidine. However, defendant followed through on the sale of the piperidine that he had already ordered for Individual A.

8. The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge

regarding the charged crime and related conduct.

## Maximum Statutory Penalties

9. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 5 years. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

10. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently

in effect, namely the November 2007 Guidelines Manual.

    b.    **Offense Level Calculations.**

        i.    The base offense level for the charge in the information is 8, pursuant to Guideline §2Q1.2(a);

        ii.    The offense level is increased by 4 levels pursuant to Guideline §2Q1.2(b)(4) because the offense involved the transportation, treatment, storage, or disposal of a hazardous substance without a permit or in violation of a permit;

        iii.    The offense level is increase another 2 levels pursuant to Guideline § 2Q1.2(b)(7) because defendant was convicted of an offense under 49 U.S.C. § 5124.

        iv.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history

category is I.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 12, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 10 to 16 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

  e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

  f. Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may

correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

12. Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

13. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1 to depart downward from the guidelines range. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. The government will make no

recommendation regarding the sentence to be imposed. Defendant shall be free to recommend any sentence.

14. If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

15. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

16. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

17. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall

fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

18. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

19. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be

sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

20. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 534.

21. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than

twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

    **b.**    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

        i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

      iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      c.      **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1,

defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, the manner in which the sentence was determined, and his counsel's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it apply to a request by defendant pursuant to Sentencing Guideline § 1B1.10 and 18 U.S.C. § 3582(c)(2) for a reduction in sentence as a result of an amendment to the Sentencing Guidelines applicable to defendant and expressly made retroactive by the United States Sentencing Commission.

    d.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

    23.    By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result

of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

## Other Terms

24.  Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

25.  Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

26.  Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in

accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

28. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 7/18/2008

_____
PATRICK J. FITZGERALD
United States Attorney

_____
LAWRENCE GONSALVES
Defendant

_____
BENJAMIN F. LANGNER
Assistant U.S. Attorney

_____
DEAN MORASK
Attorney for Defendant